DEANNA PINETTE *v.* CASEY E. MCLAUGHLIN ET AL.
(AC 25598)

Schaller, Harper and Stoughton, Js.

---

Argued March 23—officially released August 1, 2006

*Max F. Brunswick*, with whom, on the brief, was *Maura L. McInnis*, for the appellant (plaintiff).

*James E. Kernan*, for the appellees (defendants).

*Opinion*

STOUGHTON, J. Following a fall on icy steps on January 24, 2000, the plaintiff, Deanna Pinette, brought an action in a two count complaint, commenced on January 16, 2003, against the defendants, Casey E. McLaughlin and Maura F. McLaughlin. Count one of

the complaint alleged breach of contract, and count two alleged a violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). The court rendered summary judgment in favor of the defendants on both counts, and the plaintiff now appeals. We affirm the judgment of the trial court.

The following facts are relevant to our analysis of the plaintiff's claims on appeal. The defendants are the owners of a two-family property at 276-278 Farmington Avenue in Bristol. The property consists of two separate apartments, one on the first floor and one on the second floor, with each apartment having its own separate entrance on opposite sides of the structure. The plaintiff was the tenant at 278 Farmington Avenue, which was the first floor apartment. The second floor apartment, 276 Farmington Avenue, was leased to Darcy McNelly. On January 24, 2000, the plaintiff was leaving McNelly's apartment after having visited her there. While descending the steps of McNelly's apartment, the plaintiff slipped and fell on ice that had accumulated there.

At the outset, we set forth our standard of review. "Our review of the trial court's decision to grant [a] defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 7, 882 A.2d 597 (2005). "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 6. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party

opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995). Summary judgment may be rendered where the claim is barred by the statute of limitations. *Lind-Larsen* v. *Fleet National Bank of Connecticut*, 84 Conn. App. 1, 8, 852 A.2d 799, cert. denied, 271 Conn. 940, 861 A.2d 514 (2004).

I

The plaintiff first claims that the court improperly rendered summary judgment in favor of the defendants on the first count of her complaint. The court concluded that count one, while pleaded as a cause of action for breach of contract, actually stated a claim of negligence. The court therefore rendered summary judgment because the plaintiff had failed to commence her action for negligence within the applicable statute of limitations period. We agree with the court.

The plaintiff contends that a cause of action for breach of contract exists on the basis of her lease of 278 Farmington Avenue, or, alternatively, on the basis of McNelly's lease of 276 Farmington Avenue, to which the plaintiff claims she is a third party beneficiary. The plaintiff argues that, under both leases, the defendants were contractually obligated to maintain the roof and drainage system at 276-278 Farmington Avenue in a fit and habitable condition and that the defendants breached this obligation, which resulted in the accumulation of ice on the outside steps of 276 Farmington Avenue and caused her to become injured.

Regardless of whether the plaintiff's claim is based on her own lease or McNelly's, the plaintiff may not succeed on her breach of contract claim because, as in *Gazo* v. *Stamford*, 255 Conn. 245, 262–64, 765 A.2d

505 (2001), her claim is essentially one of tort, not contract. In *Gazo*, our Supreme Court concluded that the trial court properly had stricken the plaintiff's claim for breach of contract on the basis of his fall on an icy sidewalk because the claim, while cast in contract language, alleged a personal injury and sought damages for pain and suffering.[1] Id., 246–47. With such allegations, the court remarked, "the gravamen of the action is the misconduct and the damage, and . . . it is essentially one of tort, which the plaintiff cannot alter by his pleading." (Internal quotation marks omitted.) Id., 263.[2] The Supreme Court affirmed the trial court's decision striking the contract claim on the basis of the principle that "[a] plaintiff may not convert that liability into one sounding in contract merely by talismanically invoking contract language in his complaint. . . . [P]utting a contract tag on a tort claim will not change its essential character." (Citations omitted; internal quotation marks omitted.) Id., 262–63.

"[T]he interpretation of pleadings is always a question [of law] for the court . . . ." (Internal quotation marks omitted.) *Harris* v. *Shea*, 79 Conn. App. 840, 842, 832 A.2d 97 (2003). When determining whether an action lies in tort or contract, *Gazo* instructs us to "look beyond the language used in the complaint to determine what the

---

[1] The plaintiff attempts to distinguish *Gazo* on the ground that in that case, the plaintiff was a mere passerby who had no contractual relationship with the defendant, whereas, here, the plaintiff had a contractual relationship with the defendants via the lease of 278 Farmington Avenue. It is clear from the court's ruling in *Gazo*, however, that such a distinction is not determinative and that, even if we were to assume that a contractual relationship between the parties does exist in this case, the plaintiff's claim is one sounding in tort because of the nature of the injury and the damages sought. See *Gazo* v. *Stamford*, supra, 255 Conn. 262.

[2] In a contract claim, the court stated, the injury suffered usually is one of monetary loss arising out of the breach, and the damages are intended to "place the injured party in the same position as he would have been in had the contract been performed" and "ordinarily do not encompass such losses as pain and suffering." *Gazo* v. *Stamford*, supra, 255 Conn. 264–65.

plaintiff really seeks." *Gazo* v. *Stamford*, supra, 255 Conn. 263. In *Gazo*, the court focused on the injury alleged and the nature of the relief sought to define the cause of action. See id., 264. Since the ruling in *Gazo*, this court, in interpreting whether a statutory provision sounded in tort or in contract, has restated the principle that "it is the nature of the relief sought and not the nature the parties' relationship that determines the character of the action." *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 599, 894 A.2d 335 (2006); see also *Bross* v. *Hillside Acres, Inc.*, 92 Conn. App. 773, 782, 887 A.2d 420 (2006); *Lind-Larsen* v. *Fleet National Bank of Connecticut*, supra, 84 Conn. App. 16 (damages sought for pain and suffering indicative that complaint sounded in tort rather than contract). In the present case, the plaintiff alleged personal injury damages resulting from a slip and fall. She claimed not only that the defendants failed to maintain the roof and drainage system, but also that the defendants failed to keep the steps free from ice by shoveling, sanding and salting, failed to enclose the steps with a roof or covering, failed to put handrails on the steps and that the steps were unreasonably steep and dangerous. It is clear, on the basis of the allegations in the plaintiff's complaint, that regardless of any lease agreement between the plaintiff and the defendants, the plaintiff's claim is one of negligence, rather than breach of contract.[3]

The court rendered summary judgment in favor of the defendants on the ground that the statute of limitations for a claim of negligence had expired. Whether a

---

[3] Of course, a contract to undertake certain obligations may give rise to a duty that forms the basis for a claim of negligence. That is to be distinguished, however, from a cause of action based on breach of contract. See *Gazo* v. *Stamford*, supra, 255 Conn. 264. The authority relied on by the plaintiff, *Dial* v. *Mihalic*, 107 Ill. App. 3d 855, 856–57, 438 N.E.2d 546 (1982), is an example of a cause of action for negligence in which the duty of reasonable care arose out of a lease between the defendant landlord and another tenant. Because the claim in *Dial* was one of negligence, not breach of contract, it does not lend support to the plaintiff's argument.

party's claim is barred by the statute of limitations is a question of law that we review de novo. *Lind-Larsen* v. *Fleet National Bank of Connecticut*, supra, 84 Conn. App. 8. The plaintiff commenced this action on January 16, 2003, more than two years from the date on which the plaintiff allegedly sustained her injuries. General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ." Because the statute of limitations had run on the plaintiff's claim of negligence, the court properly rendered summary judgment in favor of the defendants on the first count.[4]

## II

We next address the issue of whether the court properly rendered summary judgment in favor of the defendants on the second count of the amended complaint, which alleged a CUTPA violation. The plaintiff claims that the defendants, by allowing ice to accumulate on the steps at 276 Farmington Avenue, violated General Statutes § 47a-7 (a) (2), which, in relevant part, requires landlords to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition . . . ."[5] She argues that the defendants' violation of § 47a-7 (a) (2) offends public policy and amounts

[1] In *Gazo*, our Supreme Court emphasized that "[t]he law should not permit [a plaintiff] to recast what is essentially a tort claim as a contract claim solely to gain the potential advantage of a longer statute of limitations." *Gazo* v. *Stamford*, supra, 255 Conn. 266. In the present case, as in *Gazo*, "the only practical effect of permitting a contract claim to lie would be to extend the tort statute of limitations . . . ." Id.

[5] Specifically, the amended complaint stated: "The [d]efendants . . . failed to maintain a gutter and drainage system for first steps [at 276 Farmington Avenue] . . . and . . . failed to maintain handrails on both sides of said steps and . . . maintained said first step down in steep and dangerous condition thereby violating the standards of housing safety and habitability set forth in General Statutes § 47a-7 (a) (2) . . . ."

to an unfair trade practice under CUTPA. The court granted the defendants' motion for summary judgment because the plaintiff failed to allege an unfair trade practice, as she was neither a tenant of the premises where the alleged CUTPA violation occurred, nor a third party beneficiary of McNelly's lease. We agree and conclude that the plaintiff failed to allege a cognizable claim under CUTPA.

CUTPA provides in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a).[6] Section 42-110a (4) defines trade and commerce to include the rental of real property. In determining whether a practice violates CUTPA we are guided by the criteria set out in the Federal Trade Commission's so-called cigarette rule: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC,* 275 Conn. 105, 155, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because

---

[6] General Statutes § 42-110g (a) provides in relevant part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. . . ."

to a lesser extent it meets all three." (Internal quotation marks omitted.) Id.

In *Conaway* v. *Prestia*, 191 Conn. 484, 491, 464 A.2d 847 (1983), our Supreme Court held that a landlord may be liable under CUTPA for a violation of the statutes governing landlords and tenants. Notably, in all of the cases holding a landlord liable for such a regulatory violation, the plaintiff has been a tenant of the premises on which the CUTPA claim was based. See, e.g., *Muniz* v. *Kravis*, 59 Conn. App. 704, 714, 757 A.2d 1207 (2000) (concluding that plaintiff who was not tenant failed to allege unfair trade practice under CUTPA). In the present case, by contrast, it is undisputed that the plaintiff was not a tenant of 276 Farmington Avenue, the premises on which she sustained her injuries.[7] Because the plaintiff is not a tenant of the property, the policy justifications supporting a CUTPA claim on the basis of the landlord's violation of the landlord-tenant act are not present in this case.[8] Further, because the plaintiff is not a tenant of the property, she is not a "consumer" for

[7] On appeal, the plaintiff argues, in addition, that she has alleged a cognizable CUTPA claim on the basis of her *own* lease with the defendants of the premises at 278 Farmington Avenue. She contends that the defendants failed to maintain the common roof and drainage system over 276-278 Farmington Avenue in a fit and habitable condition, which violated § 47a-7 (a) (2) with respect to her tenancy. The plaintiff makes this argument for the first time on appeal. Her amended complaint did not assert a CUTPA claim on the basis of her lease; see footnote 5; and the plaintiff is limited to what is alleged in her pleadings. See *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 490, 520, 890 A.2d 140 ("[i]t is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint" [internal quotation marks omitted]), cert. denied, 277 Conn. 928, 895 A.2d 798 (2006). Further, the plaintiff never provided a copy of her lease for the record. Accordingly, we decline to review this claim.

[8] Thus, *Simms* v. *Candela*, 45 Conn. Sup. 267, 711 A.2d 778 (1998), relied on by the plaintiff in support of her argument that she has, in fact, alleged an unfair trade practice, is distinguishable from the present case because in *Simms*, the plaintiff was the tenant of the premises on which he sustained his injuries, whereas here, the plaintiff was not a tenant. The court in *Simms* based its conclusion that the plaintiff had stated a claim under CUTPA on the fact that the landlord, by failing to make an expenditure to conform to the requirements of the landlord-tenant statutes, enhanced his economic

the purposes of CUTPA. Although our Supreme Court repeatedly has stated that CUTPA does not impose the requirement of a consumer relationship; see *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 643, 804 A.2d 180 (2002); the court also has indicated that a plaintiff must have at least *some* business relationship with the defendant in order to state a cause of action under CUTPA. See *Ventres* v. *Goodspeed Airport, LLC*, supra, 275 Conn. 155;[9] see also *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 88, 793 A.2d 1048 (2002) ("[i]t strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any trade or commerce" [internal quotation marks omitted]). In the present case, the court correctly concluded that no such business relationship existed between the plaintiff and the defendants for the purposes of the particular CUTPA violation alleged in the complaint.[10]

As for the plaintiff's claim that a business relationship does exist because she is a third party beneficiary of the lease between the defendants and McNelly, we do not agree.

---

condition at the expense of the tenant's well-being. Id., 274. In the present case, the plaintiff is not a tenant of the property and, thus, such a policy consideration is not implicated.

[9] In *Ventres* v. *Goodspeed Airport, LLC*, supra, 275 Conn. 105, the court rejected the argument that the cigarette rule "encompasses businesspersons in general" and dismissed the CUTPA claim on the ground that "[t]he relationship between the [parties] [could not] be characterized as competitive in any ordinary business sense." Id., 157. The court observed that even in *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 261 Conn. 626, the parties had had a business relationship with each other because, although the plaintiffs were neither consumers nor competitors of the defendant, they had entered into settlement agreements with the defendant. *Ventres* v. *Goodspeed Airport, LLC*, supra, 157–58.

[10] Because the complaint alleged an unfair trade practice at 276 Farmington Avenue, the relevant inquiry is whether the plaintiff had a business relationship with the defendants with respect to that property. The plaintiff's lease of the neighboring apartment, itself, does not establish such a business relationship with the defendants.

"The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. . . . [T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although . . . it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . the only way a contract [will] create a direct obligation between a promisor and a third party beneficiary [is when] the parties to the contract so intended." (Citations omitted; internal quotation marks omitted.) *Gazo* v. *Stamford*, supra, 255 Conn. 261.

The language of McNelly's lease does not expressly indicate any willingness on the part of the defendants to confer third party beneficiary status onto McNelly's social invitees. The plaintiff argues, despite this, that the language of the lease indicates that the defendants were *aware* that invitees would be visiting the apartment. The fact that the defendants were aware that McNelly would have guests such as the plaintiff visiting her apartment is not sufficient to create rights under a contract as a third party beneficiary, however. See id., 267. That the plaintiff happened to be McNelly's neighbor and was a party to a separate lease agreement with the defendants does not affect the ultimate inquiry of whether the defendants specifically intended the plaintiff to be a third party beneficiary of McNelly's lease.

Accordingly, we conclude that the court properly granted the defendants' motion for summary judgment

on the ground that the plaintiff had failed to allege an unfair trade practice under CUTPA.

The judgment is affirmed.

In this opinion the other judges concurred.